(March 21, 1916.)

STATE, Respondent, v. J. W. BAKER, Appellant.

[156 Pac. 103.]

CRIMINAL LAW—VIEW OF PREMISES BY JURY—IMPROPER RECEPTION OF EVIDENCE — PRESUMPTION OF PREJUDICIAL INFLUENCE — VIEW OF PREMISES AFTER SUBMISSION OF CASE—WAIVER OF ERROR.

1. Under sec. 7878, Rev. Codes, a jury may be allowed, in the exercise of the discretion of the court, to inspect the scene of the transaction under investigation, but it is improper for the jury to take evidence by experimentation or otherwise outside of the court. *Held*, that in this case a demonstration by certain jurors with a broom and the making of statements by outsiders in the presence of the jury while engaged in a view permitted by the court, constituted receiving evidence other than a view within the meaning of said sec. 7878, Rev. Codes.

2. Where evidence has been improperly received by a jury engaged in a view under sec. 7878, Rev. Codes, the presumption arises, in the case of one being prosecuted for the commission of an offense, that the jury has been prejudicially influenced by receiving evidence other than a view of the premises.

3. Sec. 7878, Rev. Codes, which provides that a view of the premises may be had by the jury when in the opinion of the court such view is proper, contemplates a view prior to the argument of counsel and the giving of instructions by the court. It was not intended by this section to give the jury permission to view the premises after the cause had been submitted to them.

4. Where the defendant in a criminal case consents to a view of the premises by the jury after the submission of the case, and is present with his counsel during such view, he is chargeable with knowledge of any irregularity that may have taken place or any error that may have been committed in his presence, and in that event should avail himself of the first opportunity to call to the

attention of the trial judge such error or irregularity, and in the absence of a showing to the contrary, "the first opportunity" will be considered to be upon the return of the jury from the view.

5. It is incumbent upon the defendant in a criminal case, as it is upon a party in a civil action, if he would take advantage on appeal of the commission of an error during the progress of his trial, to make his objection and save his exception at the time when the error or irregularity was committed, and he is not permitted to await the action of the jury, and after an adverse verdict has been rendered assign as error alleged misconduct of the jury which was known to him at the time, and by reason thereof be granted a new trial.

6. Where the attorney for the defendant stated after a view of the premises by the jury, under sec. 7878, Rev. Codes, that he was satisfied with such view, it was not incumbent upon the attorney for the state to call to the attention of the court any alleged error committed during such view, and thereby save the record for the defendant's case on appeal.

[As to right of court, trying case without jury, to view the premises, see note in Ann. Cas. 1916A, 258.]

APPEAL from the District Court of the Third Judicial District, for Ada County. Hon. Charles P. McCarthy, Judge.

Defendant was charged with the crime of assault with intent to commit murder. Convicted of assault with a deadly weapon. *Affirmed.*

Charles F. Reddock, K. I. Perky and Charles Clifton, for Appellant.

"Experiments by jurors by which they ascertain facts material to the case but not included in the evidence, constitutes misconduct on their part and will justify reversal." (12 Cyc. 678; *Nelson v. State* (Tex. Crim.), 58 S. W. 107; *Logan v. State,* 46 Tex. Crim. 573, 81 S. W. 721; *State v. Sanders,* 68 Mo. 202, 30 Am. Rep. 782; *Forehand v. State,* 51 Ark. 553, 11 S. W. 766; *Jim v. State,* 4 Humph. (Tenn.) 289; *People v. Conkling,* 111 Cal. 616, 44 Pac. 314; *State v. Landry,* 29 Mont. 218, 74 Pac. 418; *People v. Tyrrell,* 3 N. Y. Cr. 142; *State v. Miller,* 61 Wash. 125, Ann. Cas. 1912B, 1053, 111 Pac. 1053.)

We have shown gross misconduct—receiving evidence out of court and talking with one of the state's witnesses and her daughter; and unless waived by the defendant, it is incumbent upon the state to show that no prejudice resulted. (*People v. Stokes,* 103 Cal. 193, 42 Am. St. 102, 37 Pac. 207; *State v. Applegate,* 28 N. D. 395, 149 N. W. 356, L. R. A. 1915C, 315; *State v. Tilden,* 27 Ida. 262, 147 Pac. 1056.)

Appellant could not, if he would, waive the error complained of; to allow him to so waive, would be for the law to authorize the violation of its own provisions, and thus contravene public policy; hence it was not necessary that the defendant object to the error and preserve the same by exception in the record, in order not to waive the error complained of.

"That which the law requires and makes essential in the trial of persons accused of a felony cannot be dispensed with, either by the consent of the accused or by his failure to object to unauthorized methods pursued by those in authority." (*State v. Mannion,* 19 Utah, 505, 75 Am. St. 753, 57 Pac. 542, 543, 45 L. R. A. 638; *State v. Vanella,* 40 Mont. 326, 106 Pac. 364, 366, 20 Ann. Cas. 398; *State v. Walton,* 50 Or. 142, 91 Pac. 492, 13 L. R. A., N. S., 811.)

J. H. Peterson, Atty. Genl., R. L. Givens, Pros. Atty. and E. P. Barnes, Asst., for Respondent.

Defendant did not except to the alleged misconduct of the jury before the verdict, having knowledge at all times as to such alleged misconduct and the various circumstances incident thereto. Exceptions, unless taken at proper time, are waived. (*State v. Reed,* 3 Ida. 754, 35 Pac. 706; *State v. McGinnis,* 12 Ida. 336, 85 Pac. 1089; *People v. Kuok Wah Choi,* 2 Ida. 90, 6 Pac. 112; *State v. Roe,* 19 Ida. 416, 113 Pac. 461; *State v. Harness,* 10 Ida. 18, 27, 76 Pac. 788; *State v. Sly,* 11 Ida. 110, 80 Pac. 1125; *State v. Marquardsen,* 7 Ida. 352, 62 Pac. 1034; *State v. Murphy,* 7 Ida. 183, 61 Pac. 462; *People v. Ah Hop,* 1 Ida. 698; *State v. Suttles,* 13 Ida. 88, 88 Pac. 238; *State v. Schieler,* 4 Ida. 120, 37 Pac. 272; *State v. Smith,* 4 Ida. 733, 44 Pac. 554; *State v. Rooke,* 10 Ida. 388, 79 Pac. 82; *State v. Peck,* 14 Ida. 712, 95 Pac. 515; *State v.*

*Harris,* 18 Ida. 620, 111 Pac. 406; *State v. Corcoran,* 7 Ida. 220, at 249, 61 Pac. 1034; *State v. Moon,* 20 Ida. 202, Ann. Cas. 1913A, 724, 117 Pac. 757; *Jackson v. United States,* 102 Fed. 473, 42 C. C. A. 452; *Lee v. McLeod,* 15 Nev. 158, 163; Dec. Dig., Crim. Law, 868; 29 Cyc. 813; 12 Cyc. 681.)

This error could have been cured if taken in proper time, but through the fault and negligence of the defendant it was not done, as it appears from the affidavits that the defendant and his counsel being present at the view knew all of these circumstances. (*Schumacher v. Truman,* 134 Cal. 430, 66 Pac. 591; *Trombley v. State,* 167 Ind. 231, 78 N. E. 976, at 977; *Commonwealth v. Borasky,* 214 Mass. 313, 101 N. E. 377; *Young Chung v. State,* 15 Ariz. 79, 136 Pac. 631; *Cardwell v. State,* 1 Ala. App. 1, 56 So. 12; *State v. Mitchell,* 127 La. 270, 53 So. 561; *Waller v. State,* 2 Ga. App. 636, 58 S. E. 1106; *Messenger v. State,* 152 Ind. 227, 52 N. E. 147; 12 Cyc. 681, note 29, 813; 8 Ency. Pl. & Pr. 1086; *State v. Ballew,* 83 S. C. 82, 63 S. E. 688, 64 S. E. 1019, 18 Ann. Cas. 569; Thompson on Trials, sec. 2604.) The objection of the defendant as to the alleged misconduct on the part of the jury comes too late on motion for new trial. (Par. 700, Thompson on Trials; *McDonald v. Challis,* 22 Ida. 749, 128 Pac. 570.)

It is not competent for a court to receive affidavits of jurors impeaching their verdict on motion for a new trial. (*State v. Marquardsen,* 7 Ida. 352, 62 Pac. 1034; *State v. Rigley,* 7 Ida. 292, 62 Pac. 679.)

BOTHWELL, District Judge.—The defendant, J. W. Baker, was charged with the crime of assault with intent to commit murder, and was convicted of assault with a deadly weapon. This appeal is taken from the judgment and from an order denying and overruling a motion for a new trial.

The grounds for a new trial assigned by the appellant and relied upon for a reversal of this case are: (1) That the jury received evidence out of court other than that resulting from a view of the premises; (2) misconduct of the jury by which a fair and due consideration of the case has been prevented.

It is shown by the record that at 12:10 P. M. on February 10, 1915, the jury while deliberating requested that it be permitted to view the premises where the assault was alleged to have been perpetrated, which request was granted by the court. The appellant consented to the action of the court and waived the presence of the trial judge at and during the view, whereupon the deputy sheriff was sworn to suffer no person to speak to, or communicate with, the jury, or to do so himself on any subject connected with the trial, and to return the jury into court without unnecessary delay, and was directed to conduct the jury to the premises in question for the purpose of a view.

The deputy sheriff thereupon conducted the jury in a body to the residence of one Bessie Myers, where it was alleged that the offense had been committed. The appellant and one of his counsel accompanied the jury and were present during the view.

The information charges that the appellant made an assault upon one Mrs. Roy E. Wroten with a certain broom, being of a total length of about fifty-three inches, and the handle of which was about forty inches in length and about one inch in diameter and made of a certain hard wood.

A number of affidavits have been filed by the appellant and respondent for the purpose of showing the conduct of the jury at and during the view of the premises. Without quoting at length or in detail from the various affidavits, which we have examined with care, we find the facts to be as follows:

Upon the arrival of the jury at the premises, the foreman secured a broom from the back porch and in the presence of the jury made a demonstration by holding the broom by the brush and striking with it as though using it as a weapon. When the broom was raised over his head it touched the ceiling, but when swung from the shoulder or at an angle, it did not. One of the jurors suggested that the foreman was a larger man than appellant, and thereupon the broom was delivered to H. M. Buck, one of the jurors, and to George L. Myers, another of the jurors, each of whom demonstrated

with the broom to ascertain whether or not a "lick" could be struck in the manner alleged and presented to the jury.

. Shortly after the jury entered the house, one of the jurors inquired if this (indicating a door between the dining-room and parlor)- was the door that Mrs. Wroten was supposed to have fallen against, and Mrs. Myers replied that it was. One of the jurors endeavored to open a door leading direct from the dining-room to the back porch, and Mrs. Myers stated that that door was locked and that was where the side-board had stood. There was more or less talk among the jurors during the view and they were requested not to talk by the foreman and by the deputy sheriff. At one time the deputy sheriff warned the jurors not to discuss the case so that anyone else might hear them. Laura Henroid, daughter of Mrs. Myers, spoke to the deputy sheriff saying that the buffet stood before that door (pointing) and that that door had never been opened. The attorney for the defendant called the deputy sheriff's attention to the fact that Mrs. Myers and her daughter were talking so that the jury could hear them, whereupon the deputy sheriff warned Mrs. Myers and her daughter not to talk.

On leaving the premises the deputy sheriff addressed the attorney for the appellant (referring to the conversation in the presence of the jury) and asked: "Do you think it did any harm?" Whereupon the attorney for the appellant replied, "I don't know; I hope not."

The affidavit of E. P. Barnes, deputy prosecuting attorney, and which is not controverted by the appellant, states that he met the attorney for the appellant directly after the view, and that appellant's attorney related to him the circumstances of the use of the broom on the part of the jurors and stated that there could be no error claimed on the part of the state or defendant on account of anything that took place during the entire view, and that he was satisfied with the view.

It is upon the foregoing facts that the appellant seeks a new trial.

Counsel for respondent, in answer to the assignments of error by appellant, contends, first, that the action of the jury

during the view and the statements made in the presence of the jury did not amount to receiving evidence out of court, within the meaning of sec. 7952, Rev. Codes; second, that if it does come within the meaning of sec. 7952, it was not prejudicial to the defendant and does not amount to misconduct by which a fair and due consideration of the case has been prevented; and, third, although misconduct has been shown, by which a fair and due consideration of the case has been prevented, appellant waived such error by failing to bring the same to the attention of the trial court upon the return of the jury to the jury-room and prior to the verdict.

Sec. 7952, Rev. Codes, provides that "When a verdict has been rendered against the defendant, the court may, upon his application, grant a new trial in the following cases only:

"  . . . . 2. When the jury has received any evidence out of court other than that resulting from a view of the premises; 3. . . . . or been guilty of any misconduct by which a fair and due consideration of the case has been prevented; . . . . "

Sec. 7878, Rev. Codes, provides as follows:

"When, in the opinion of the court, it is proper that the jury should view the place in which the offense is charged to have been committed, or in which any other material fact occurred, it may order the jury to be conducted in a body, in the custody of the sheriff, to the place, which must be shown to them by a person appointed by the court for that purpose; and the sheriff must be sworn to suffer no person to speak or communicate with the jury, nor to do so himself, on any subject connected with the trial, and to return them into court without unnecessary delay, or at a specified time."

In the very exhaustive note to the case of *People v. Thorn,* 42 L. R. A. 368, the author in discussing the nature and effect of "view" announces that there are three different theories as to the effect to be given to the observation of a jury on a view. According to one theory, what the jury may observe can under no circumstances become evidence, nor are they entitled to take it into consideration otherwise than as affording them means to better understand and apply the testi-

mony which has been produced. According to another, what may be called "mute evidence" may be used by the jury in reaching their conclusions, like any other evidence offered, and under some circumstances it may even be taken as determinative of the dispute to the exclusion of parol testimony. The middle line permits the jury to use their observation as evidence, but not as preponderating or in itself sufficient to uphold the verdict, as that must measurably, at least, be supported by what actually appears in the record. We find a long line of authorities supporting the different theories as therein announced.

The court in the case of *State v. McGinnis,* 12 Ida. 336, 85 Pac. 1089, had under consideration the absence of a defendant during a view, under sec. 7782, and in referring to the case of *State v. Reed,* 3 Ida. 754, 35 Pac. 706, states:

"We have very grave doubts, however, as to the correctness of that decision, and while we are not called upon in this case to either affirm or overrule the doctrine of that case, we are strongly impressed with the fallacy of the reasoning on which that line of authorities is founded. The position taken by the attorney general in the present case [*State v. McGinnis*] amounts, upon the whole, to a quite conclusive argument against the theory on which those cases rest. It is held by that line of authorities that an inspection and examination of the place or premises where the offense is charged to have been committed, or some material fact occurred, is 'not a part of the trial,' and does not amount to 'the taking of evidence in the case.'"

Counsel for the state further contended in that case that the view and personal inspection of the premises by the jury was effective evidence, and the court in discussing this feature of the case states as follows:

"It would be a strange course of reasoning that would hold an inspection of the premises *evidence* in the case for the purpose of weighing the sufficiency of the evidence to support the verdict and judgment, and, on the other hand, would contend and hold that it is not evidence and not a part of the trial, but a mere 'aid to understand and apply the evidence,'

when we come to consider the necessity for the presence of the defendant at such inspection.''

For the purpose of this opinion, it is unnecessary to enter into a discussion of the different theories announced by the courts in defining the nature and effect of a view. Suffice it to say, we have found no case under any of the theories that goes so far as to hold that a demonstration such as was indulged in by certain of the jurors in the presence of the jury in this case is within the meaning of a view. On the contrary, a number of cases hold that experiments made by the jurors is the taking of evidence other than a view of the premises (see *Hays v. Territory,* 7 Okl. 15, 54 Pac. 300; *People v. Conkling,* 111 Cal. 616, 44 Pac. 314; *State v. Landry,* 29 Mont. 218, 74 Pac. 418; *State v. Miller,* 61 Wash. 125, Ann. Cas. 1912B, 1053, 111 Pac. 1053; *State v. Lopez,* 15 Nev. 407; *People v. Thorn,* 42 L. R. A. 368, and cases there cited), and we must hold that the demonstration by the jurors with the broom and the statements by Mrs. Bessie Myers and Laura Henroid in the presence of the jury was receiving evidence other than a view, within the meaning of sec. 7878, Rev. Codes.

The record does not contain a transcript of the evidence taken at the trial, and in considering the next question, as to whether or not the evidence received by the jury other than a view was prejudicial, we can look only to the affidavits furnished by the respective parties and used by the trial court on the motion for a new trial. On this question the author in 12 Cyc., at p. 718, states that the authorities are conflicting upon the question of presumption as to prejudice, and continues by saying:

''Some hold that if such misconduct might have been prejudicial to defendant, prejudice will be presumed, particularly in capital cases, and that a new trial must be granted unless this presumption is rebutted by affirmatively showing that there was in fact no prejudice. A few cases hold that in capital cases at least prejudice will be conclusively presumed and a new trial granted if there may have been prejudice. Others hold generally that prejudice will not be pre-

sumed, at least unless a probability of prejudice appears, and that a new trial will not be granted unless defendant affirmatively shows that he has been prejudiced.''

This court had under consideration the question of a separation of the jury in violation of the statute, in the case of *State v. Sly,* 11 Ida. 110, 80 Pac. 1125, and in adopting the rule theretofore laid down in the case of *State v. Bland,* 9 Ida. 796, 76 Pac. 780, uses the following language:

''It seems to us the safer and better rule, and one more consonant with reason and justice, to say that when the defendant shows that the jury have separated in violation of the statute, he has made a sufficient *prima facie* showing to entitle him to a new trial and to shift the burden on to the state of showing clearly and beyond a reasonable doubt that nothing transpired during the separation, or on account of the separation, that did or could prejudice the defendant, and that if the state succeeds in making such a showing, then a new trial should be denied. The purpose of the statute, as well as the result intended to be accomplished by these trials, is to attain the ends of justice, and we think the conclusion at which we have arrived will accomplish that result.''

The court discusses this question quite at length in the cases of *State v. Bland* and *State v. Sly, supra,* and we are of the opinion that the weight of authority favors the rule laid down by Mr. Hayne in his work on New Trial and Appeal, vol. 1, section 39, which is as follows:

''That where the losing party shows that some private communication was made by the judge to the jury, it devolves upon the successful party to show what the communication was, and that unless he does this the verdict must be set aside; that where it clearly appears what the communication was, then if it be of such a character that it may have affected the jury, the verdict must be set aside; but that if the court can see from the record that it could not have had any effect, the verdict should stand.''

Under the weight of authority it is incumbent upon the respondent to show that the appellant has not been prejudiced by such evidence. The only showing made on this question

by respondent is that the evidence was received by the jury. This, of course, cannot be considered by the court as showing, or even tending to show, that the appellant was not in fact prejudiced by the action of the jury. As heretofore stated, the record does not contain a transcript of the evidence, and in appeals of this nature it seems that the practice that permits an appeal to be taken without furnishing a transcript of the evidence is entirely unfair to the trial judge. However, we can only say that the showing made by the respondent is not sufficient to overcome the presumption that the jury was influenced by the evidence received other than a view of the premises.

The serious question is whether or not the appellant waived the error committed by the jury and has therefore waived his right to urge the same as a ground for a new trial.

The rule seems to be uniform that any misconduct on the part of the jurors in a criminal case, which was prejudicial to defendant, or any such misconduct on the part of the judge, officer in charge, or outsider, improperly influencing the jurors, not caused nor waived by defendant, is ground for setting aside a conviction and granting a new trial. The above rule is announced by the author in 12 Cyc., at p. 716, and a number of cases are cited in support thereof, and we have found no exceptions to this general rule.

This state has uniformly held that exceptions, unless taken at the proper time, are waived. (*People v. Kuok Wah Choi,* 2 Ida. 90, 6 Pac. 112; *State v. Reed,* 3 Ida. 754, 35 Pac. 706; *State v. Schieler,* 4 Ida. 120, 37 Pac. 272; *State v. McGinnis,* 12 Ida. 336, 85 Pac. 1089; *State v. Roe,* 19 Ida. 416, 113 Pac. 461; *McDonald v. Challis,* 22 Ida. 749, 128 Pac. 570.)

Sec. 7878, *supra,* which provides that a view of the premises may be had when in the opinion of the court it is proper, contemplates a view prior to the argument of counsel and the giving of instructions to the jury by the court. It is not intended by this section that a jury, after deliberation, might request the court to view the premises, but in the case at bar the appellant expressly consented to the view, waived the presence of the trial judge and with his counsel accompanied

the jury. This amounts to a waiver of the irregularity, and, in our opinion, puts the appellant in the position of joining in the request made by the jury. Had he not consented, the trial judge would have, of course, been bound to refuse the request of the jury to view the premises. The appellant having consented to the view, and being present with his counsel during the view, is chargeable with knowledge of any irregularity or any error that may have taken place in his presence. It follows that if misconduct occurs in his presence, he should take the first opportunity to present such error to the trial judge for action, and in the absence of a showing to the contrary, "the first opportunity" will be considered to be upon the return of the jury from the view.

In this case, the attorney for the appellant, in reply to a question propounded by the deputy sheriff concerning the talking in the presence of the jury, stated that he "hoped no harm had been done" by the talking, and thereafter in informing the attorney for the respondent as to what had taken place at the view, stated that he was satisfied with the view. The appellant assigns as error the misconduct of the jury for the first time after verdict. We have examined the authorities with care on this question, and we have been unable to find any authority that will permit a defendant, knowing that a jury has been guilty of misconduct, to take the position that he is satisfied with the misconduct and await the action of the jury, and upon an adverse verdict, assign such misconduct as error and be granted a new trial. (See 1 Thompson on Trials, sec. 700; *State v. Ballew et al.,* 83 S. C. 82, 63 S. E. 688, 64 S. E. 1019, 18 Ann. Cas. 569; *State v. Barrington,* 198 Mo. 23, 95 S. W. 235; *Young Chung v. State,* 15 Ariz. 79, 136 Pac. 631; *Wade v. Commonwealth,* 106 Ky. 321, 50 S. W. 271; *State v. Mortensen,* 26 Utah, 312, 73 Pac. 562; *Jackson v. United States,* 102 Fed. 473, 42 C. C. A. 452; *Trombley v. State,* 167 Ind. 231, 78 N. E. 976; *People v. Deegan,* 88 Cal. 602, 26 Pac. 500; *State v. Floyd et al.,* 61 Minn. 467, 63 N. W. 1096.)

In 1 Thompson on Trials, sec. 700, it is stated: "Moreover, it is incumbent on the defendant in a criminal case, as it is

on a party in a civil case, if he would avail himself, on error or appeal, to make his objection and to save his exception *at the time* when the irregularity was committed."

In *State v. Ballew,* 83 S. C. 82, 63 S. E. 688, 64 S. E. 1019, 18 Ann. Cas. 569, the court said:

"It remains to consider the ground of the motion for a new trial most earnestly pressed by counsel for appellants. After the jury had retired to consider their verdict, they returned to the courtroom. The record contains this account of what then occurred: 'The Foreman: We just wanted to go down to the jail and look at this place and see if we can see whether it was knocked off or how it was cut. The Court: What do you say, gentlemen? The Solicitor: The state has no objection. Mr. Magill: We have none. The Court: Take the two prisoners with you, Mr. Sheriff. Under a recent decision they must be there, too. Take the prisoners along and let the jury look at the place with the Ballews. And all you do, Mr. Sheriff, is just show them the place, and don't say another word about anything around there, and don't let anybody else say anything to them. Show them the place where the breaking was, and take the Ballews along, too. Mr. Magill, you may go if you desire.'

"While the jury were viewing the cell, Dukes, the prosecutor, exhibited to them the cord and piece of iron which the defendants had endeavored to prove was used by the prisoners to draw the hatchet into the cell. Dukes placed the hatchet out of the cell and against the wall. The jury then tried to throw the iron attached to the cord so as to draw the hatchet into the cell, but failed, for the reason, as contended by defendants' counsel, that the hatchet was placed against the wall. In deciding the motion for a new trial the circuit judge said he would grant the motion on account of this action of the jury, but for the fact that the defendants' counsel, with full knowledge of the action of the jury, failed to bring it to the attention of the court until after the verdict. Juries may be allowed, in the discretion of the court, to inspect the scene of the transaction under investigation, but it is improper for the jury to take evidence by experimentation, or

otherwise, outside of the court.   (*Thompson v. Mallet*, 2 Bay (S. C.), 94.)   There can be no doubt, therefore, that the action of the jury in this instance was improper.   But defendants' counsel was himself present for the very purpose of seeing that there was no unfairness toward the defendants, and if he felt aggrieved by the action of the jury, he was bound to exercise his right to complain as soon as practicable. The defendants, with full knowledge of the misconduct of the jury, having chosen not to complain to the court, but rather to take the risk of a verdict in their favor, could not afterward, because the verdict was against them, have a new trial on this ground.   The general principle that a party cannot take his chances of a successful issue, reserving vices in the trial, of which he has notice, for use in case of disappointment, is universally recognized and obviously just.   It has been often applied in this state when the defendant has failed to make known his objection to individual jurors or to the panel until after the trial.   (*Blassingame v. Laurens*, 80 S. C. 38, 61 S. E. 96; *State v. Langford*, 74 S. C. 460, 55 S. E. 120.)''

In *Jackson v. United States*, 102 Fed. 473, 42 C. C. A. 452, the court in passing upon the impropriety of the jury's receiving evidence other than what was introduced upon the trial, after stating that the ground for error was not properly assigned, uses the following language:

''Moreover, the objection was not made until after the receipt of the verdict, and came too late.   If counsel knew that the jury had received evidence out of court, he should have brought the facts before the court in a proper manner, and made his objection before the verdict was received.   The plaintiff in error could not, with knowledge of the facts, remain silent, wait and speculate upon the chances of a verdict being in his favor, and then, when it was found to be against him, raise this objection.   (*Lee v. McLeod*, 15 Nev. 156, 163; Thomp. & M. Jr., § 428, and authorities there cited; 8 Enc. Pl. & Pr. 186, and authorities there cited.)''

Counsel for appellant calls our attention to the case of *State v. Sanders*, 68 Mo. 202, 30 Am. Rep. 782, where in his

argument to the jury in a trial for felony the defendant's counsel said in regard to the question of footprints that the jury might try for themselves whether such worn-out boots as the witnesses for the prosecution described could make such tracks. Some of the jury, without leave, made the experiment out of court, and the court held the same to be such error as invalidated a conviction. In passing directly upon this question, the court says:

"The question here, however, is whether, after the jury are invited by the defendant's counsel to make certain experiments for themselves, and the jury, or a portion of them do so, the defendant can, after the verdict is unfavorable, take advantage of this misconduct of the jury, invited by himself. This looks like allowing a party to take advantage of his own wrong, and therefore has caused some hesitation on our part, but upon reflection we have concluded that the court and the attorney for the State must share the responsibility of such misstatements by allowing them to go uncontradicted. The judge, who presides at a trial of a criminal, should not allow the jury to be misled as to their duties or powers."

The above case is not an authority under the facts in the case at bar. In the case at bar the trial judge had no knowledge of the misconduct of the jury until after the verdict, and there was no intimation in the presence of the trial judge that the jury would do other than view the premises.

The attorney for the appellant in this case, in disposing of the question of waiver, says: "It is true that defendant and Charles Clifton, one of his counsel, were present at and during the view, and saw and heard what took place, and if this constitutes a waiver of his right to urge the matters shown in the record for a new trial, then his appeal will avail him naught. It also appears from the record that the deputy prosecuting attorney, who conducted the case on behalf of the state, was apprised of these matters before a verdict was rendered, and we fail to see why it was not as incumbent upon him to call these matters to the attention of the court as it was for the defendant to do so. Our statute, sec. 7952, provides that receiving evidence out of court and misconduct of the jury

are grounds for a new trial. Now, if the defendant was prejudiced by what transpired at the view, is he to be deprived of his liberty, because he or his counsel failed to call the matter to the attention of the court, and ask that the jury be discharged . . . . as it is incumbent upon the state to convict him upon evidence produced in court, and not out of it," and in support thereof cites the case of *State v. Tilden,* 27 Ida. 262, 147 Pac. 1056, and *State v. Moon,* 20 Ida. 202, Ann. Cas. 1913A, 724, 117 Pac. 757.

The case of *State v. Moon, supra,* is not an authority to support counsel's contention, and in the case of *State v. Tilden, supra,* the question of waiver was never presented nor considered by the court.

True, the record shows that the deputy prosecuting attorney was advised by the attorney for the appellant as to what took place at the view, immediately after the view; but the attorney for appellant also stated that he was satisfied with the view, and the deputy prosecuting attorney not being dissatisfied, it was not incumbent upon him to save the record for the appellant.

There can be no mistake as to the rule stated by counsel for appellants that it is incumbent upon the state to convict a defendant upon evidence produced in court and not out of it, and this court will not hesitate to invoke this rule whenever it may do so under the established authorities. However, it is equally true that the defendant, in order to avail himself of error must act promptly, and this the appellant failed to do, hence the motion for a new trial must be denied.

The judgment of the lower court is therefore affirmed.

Budge and Morgan, JJ., concur.